## MISCONDUCT OF COUNSEL IN ARGUMENT TO THE JURY.

Circuit Court of Cuyahoga County.

THE AMERICAN HARD RUBBER COMPANY v. LOLA PIERCE.

Decided, June 10, 1910.

*Master and Servant—Negligence—Nature and Cause of Injuries for Jury—Charge as to Same—As to Assumed Risk—Misconduct of Counsel.*

1. In an action for damages resulting from personal injuries received as a result of the defendant's negligence, whether the causal sequence in fact includes all that the petition claims in the way of physical disability from the injury, is a question for the jury.

2. The fact that the results alleged from the cause alleged are unusual and therefore antecedently improbable, is not the true criterion. Neither is it any test that the cause was small and the effect great, nor that the particular result claimed was facilitated by concomitant circumstances. The real question is whether the plaintiff's disabilities are directly traceable to the injury received, or whether they were brought about by the active intervention of a new and distinct cause such as some injurious act or conduct of the plaintiff.

3. Unless the distinction is pointed out between the kindred doctrines of employee's risk, as applied to the ordinary hazards incident to the employment, on the one hand, and on the other hand to the defects and dangers which are not naturally incident to the employment but of which the employee has notice, it is misleading to charge that "injuries that result from the negligence of the master are not assumed," or that the rule of assumed risk "presupposes that the master has exercised due care, in providing a reasonably safe and proper place to work, and reasonably safe machinery for the performance of the required services."

4. It is misconduct of counsel, for which a judgment will be reversed, to say to the jury: "And the first thing this defendant did when this suit was brought was to compel this poor girl to give security for costs. This girl worked at this shop at a dollar a day. No wonder men become millionaires when they employ girls at such niggardly wages. You should give something as a wholesome example to this defendant in this case. Let your verdict be so large that it will be a lesson and punishment to this defendant to obey the law."

*Arthur Van Epp, W. H. Anderson, J. A. Kohler, C. E. Smoyer* and *Thompson, Glitsch* N *Cinniger,* for plaintiff in error.

*Musser, Kimber & Huffman,* contra.

HENRY, J.; WINCH, J.. and MARVIN, J., concur.

This proceeding in error was brought to reverse a judgment recovered by the defendant in error for damages for personal injuries sustained by her September 7th, 1906, while in the employ of the plaintiff in error, a manufacturer of hard rubber products such as penholders, telephone receivers, etc.

The defendant in error at the time of her injury was a young woman twenty years old. She entered this company's employ about August 9, 1906, and between that date and the time of her injury she worked in the building room, in all about three weeks. She had previously had some factory experience in two other establishments, but not at the same kind of work. Here she was engaged with many other female employees, in polishing the small hard rubber objects which this company manufactured. This was accomplished by pressing the object to be polished against the cloth covering of a rapidly revolving buffing wheel. There were in the buffing room a number of such wheels, arranged in rows about fourteen or sixteen feet apart, each wheel having an operator. To facilitate the work of polishing each operator was supplied with a lump of polishing compound, known as a grease-ball, which was applied from time to time to the revolving wheel by pressing the same against it.

Lola Pierce was one of these operators. Birdie Springston was another. At the time of the accident they were situated diagonally across the room from one another, and working at their respective wheels in different rows. While Miss Springston was applying her grease ball to her wheel, it slipped from her grasp, and being forcibly thrown by the revolving wheel across the room, struck Miss Pierce in or over her left eye. The blow was not such as to leave any permanent external marks, but it was followed by a nervous condition which renders her apparently a physical wreck.

Her petition below alleged that the company was aware that the wheels not infrequently threw objects across the room in this manner, but that she was without means of knowing and did not know that such was the fact. The negligence alleged is that the company failed to provide screens or other means to intercept such flying objects. The company insists, however, that its buffing room was equipped in the customary and most approved manner in every respect, with suction blowers to carry away the dust and without any concealed danger in or about the machines; that Miss Pierce had previously worked at the wheel which threw the grease-ball, and in short that she had full knowledge of the situation and of the conditions attending and surrounding her at the time she was injured.

The errors assigned here are:

First.  That the assumption by the plaintiff below of the risk from the negligence alleged by her is manifest both from her petition and from the facts proved; this question being saved by demurrer to the petition, and by motions to direct a verdict, and, after verdict, for a new trial, all of which were overruled and exceptions reserved.

It is true that the absence of any screen which would intercept objects flying across the room was manifest to the plaintiff below, but it is by no means clear that the danger against which a screen would have protected her was apparent to an employee with such experience and understanding as she had.  In *Pennsylvania Company* v. *McCurdy*, 66 Ohio St., 118, it was held that:

"An employee experienced in the service in which he is engaged is conclusively held to appreciate the dangers which may arise from defects of which he has, or in the exercise of due care, might have knowledge."

It can hardly be said, however, that the plaintiff below was experienced in this service wherein her entire period of employment was not more than three or four weeks.  The cause of her injury was not of the sort that to be appreciated needs but to be seen, but was rather of the nature of a latent danger discoverable only by reason of experience, in addition to mere observation. To the latter class belongs the case of *The Lake Shore & Michi-*

*gan Southern Railway Co.* v. *Fitzpatrick,* 31 Ohio St., 479, wherein:

"The plaintiff was employed by the defendant to operate a turntable by means of a crank that was stationary upon and revolved with the turntable and a track was laid in such proximity to the turntable that while an engine was on the turntable being turned by the plaintiff it was struck by an engine passing upon the track, causing the crank to strike the plaintiff by a reverse motion, inflicting the injury complained of."

In that case all the facts which contributed to the ultimate result were within the range of Fitzpatrick's observation but it would have required reflection to bring home to his mind the possibility of his being injured under those circumstances. So here, anyone who once observed an object thrown across the buffing room by any of the wheels at which the operators worked, would of course realize that the occurrence might be repeated, but until it had once occurred in fact, it would be quite unlikely to occur to the mind of an employee having but little experience.

There is some evidence in this case that the foreman had been present on some former occasion when an object was thrown across the room thus, but whether so or not, notice of the likelihood of such an occurrence may fairly be ascribed to the employer who had installed the machinery and provided the power by which it was operated, and who exercised the duty of oversight of the business. There is no evidence to show that the plaintiff below had any actual knowledge of any prior occurrence of this sort, and as already intimated constructive notice can not, merely as a matter of law, be ascribed to her. The doctrine of *Coal & Car Co.* v. *Norman,* 49th Ohio St., 598, was properly charged to the jury and this sufficed to cover the subject.

The second assignment of error is that the verdict of twelve thousand dollars is excessive and was apparently given under the influence of passion and prejudice, so as to include compensation for a disability which, so far as it is real and not merely apparent, is neither the direct consequence of the blow received by the plaintiff below, nor was it reasonable to be anticipated as likely to result from the alleged negligence of the defendant below. The cause, extent and reality of plaintiff's physical dis-

ability were, as the bill of exceptions discloses, sharply contested upon the trial. There are indeed disclosures in the record, to some of which we shall again advert, that suggest an overestimate by the jury of the actual damage sustained by the plaintiff below, as a direct consequence of the alleged negligent injury, but we fail to find enough in the record to warrant us in saying, as a matter of law, that the jury were biased, or that the verdict is excessive. On the contrary, it is apparent that if she was not malingering, and if her condition at the time of the trial was not due to some other and different cause than the one she alleges, the amount of the verdict will afford her but imperfect compensation for aggravated and lifelong invalidism.

Whether the causal sequence in fact includes all that the petition claims in the way of physical disability from the blow which the defendant in error received, was, of course, a question for the jury. The fact that such results from such a cause are unusual, and therefore antecedently improbable, is not the true criterion. Neither is it any test that the cause was small and the effect great; nor that this particular result was facilitated by concomitant circumstances. The real question is whether the defendant in error's disabilities are directly traceable and attributable to the blow, or whether they were brought about by the active intervention of a new and distinct cause, such as some injurious act or conduct of her own.

The third error assigned is upon the admission of evidence as to the existence of screens in other factories at the present time, and as to the former maintenance of such screens in this factory, all of which is claimed to be prejudicial because of the fact that the jury in this case had viewed the premises and seen the buffing room equipped in like manner after the accident. This situation, if we correctly apprehend it, is not fully disclosed by the bill of exceptions, and after examination of the pages referred to in argument and in the brief of counsel, we find no prejudicial error, although it would apparently have been better under the circumstances if the jury had not been permitted to view the premises at all.

As to the existence of screens in other factories the witness Dangel was asked but replied that he did not know; and as to

the present screens in the Akron factory the witness, though asked, did not answer, and the question was not pressed. We find no error in this regard.

The fourth assignment of error is upon the refusal of requests to charge presented by the defendant below, particularly the second request; and the giving of the third and sixth requests presented by the plaintiff below.

Defendant's second request sought to limit its liability to $3,000 pursuant to the provisions of Section (4238-o1), Revised Statutes, which provides that:

"In any action brought by an employee, or his legal representative, against his employer, to recover for personal injuries, when it shall appear that the injury was caused in whole or in part by the negligent omission of such employer to guard or protect his machinery or appliances, or the premises or place where said employee was employed, in the manner required by any penal statute of the state or United States in force at the date of the passage of the act, the fact that such employee continued in said employment with knowledge of such omission, shall not operate as a defense; and in such action, if the jury find for the plaintiff, it may award such damages not exceeding, for injuries resulting in death, the sum of five thousand dollars and for injuries not so resulting, the sum of three thousand dollars, as it may find proportioned to the pecuniary damages resulting from said injuries."

This section is claimed to be applicable because plaintiff's cause of action arises under Revised Statutes (4364-86) which provides:

"That all persons, companies or corporations operating any factory or workshop, where emery wheels or emery belts of any description are used, either solid emery, leather, leather covered, felt, canvas, linen, paper, cotton or wheels or belts rolled or coated with emery or corundum, or cotton wheels used as buffs, shall provide the same with blowers, or similar apparatus, which shall be placed over, besides or under such wheels or belts, in such a manner as to protect the person or persons using the same from the particles of dust produced and caused thereby, and to carry away the dust arising from or thrown off by such wheels or belts while in operation, directly to the outside of the building, or to some receptacle place, so as to receive and confine such dust."

Some confusion appears to have been interjected, intentionally or otherwise, into the trial of this case in regard to the presence and function of blowers. As we view the record, the presence or absence of blowers is utterly immaterial. Their function is to dispose of dust, etc., so that the operator's health shall not be injured by inhaling the same, etc. It can not be assumed that they have any function whatever in respect to intercepting objects that are thrown by the wheels across the room in which the work·is being done. There is, therefore, no ground for invoking these statutes. In the final state of the pleadings these statutory provisions are not invoked by the plaintiff, and the defendant was clearly not entitled to invoke the limitation of liability therein prescribed.

Not less plainly unwarranted are the two requests, Nos. 3 and 6, which were presented by the plaintiff below, given by the court, and excepted to by the defendant. They are both misleading. Without quoting them at length it suffices to say that they confuse the kindred but distinct doctrines of employee's risk, as applied to the ordinary hazards incident to the employment, on the one hand, and on the other hand, to the defects and dangers which are not naturally incident to the employment but of which the employee has notice. Unless this distinction is observed and allowance therefor properly made, it is misleading to say that "injuries that result from the negligence of the master are not assumed," or that the rule of assumed risk "presupposes that the master has exercised due care, as above defined, in providing a reasonably safe and proper place to work, and reasonably safe machinery for the performance of the required services."

The language thus employed, and indeed we believe the entire context of both these requests is taken from opinions of the Supreme Court; but it is to be remembered that since the reporter's note of August, 1857, prefacing the 6th Volume of the Ohio State Reports, the syllabus and not the opinion of the judge who announced the decision of the court in any case is to be taken as the authoritative expression of the precise point of law therein adjudicated. Moreover, it will not do to take language out of an opinion of a court which is entirely correct so

long as it is understood as applying peculiarly to the facts of the
case then in hand and charge the same in another case involving
a different state of facts as a correct statement of law appli-
cable thereto.

It follows from what has been said that these requests should
not have been given because they were misleading and inaccurate
as applied to the facts in this case.

The fifth assignment of error is upon the refusal of the mo-
tion for a new trial, because of newly-discovered evidence. We
do not think, however, that such diligence was shown in respect
to procuring the evidence in question at the time of the trial of
the cause as to warrant the granting of a new trial for that rea-
son. Nor is the excuse that counsel for the defendant below ex-
pected the plaintiff to produce the witnesses from whom this
testimony might have been derived at all adequate. The defend-
ant had opportunity to present evidence afterwards, but failed
to take advantage of it. The fact that they had not time to
communicate with the witnesses and find out whether their testi-
mony would be favorable or unfavorable, if it be a fact, is of no
moment.

The sixth and last assignment of error is upon the refusal to
grant a new trial for alleged misconduct of counsel below in argu-
ment to the jury. We think there was decided misconduct in
the use of the following language in the argument of counsel
for plaintiff below to the jury.

"And the first thing this defendant did when this suit was
brought was to compel this poor girl to give security for costs.
This girl worked at this shop at a dollar a day. No wonder men
become millionaires when they employ girls at such niggardly
wages. You should give something as a wholesome example to
this defendant in this case. Let your verdict be so large that it
will be a lesson and punishment to this defendant to obey the
law."

It is true that the court subsequently instructed the jury as
follows:

"In your deliberations you should entirely disregard what
counsel for plaintiff said about a motion having been filed in this
case to compel plaintiff to give security for costs, and not allow

the same, even if the same were true, to influence your verdict in any particular. That is a right which resident defendants have to be indemnified against the liability for costs which a non-resident plaintiff would make in the prosecution of an action in court."

In *The Toledo, St. Louis & Western Railroad Company* v. *Burr & Jeakle et al*, decided by the Supreme Court of Ohio, April 12, 1910, the court says of a statement no more prejudicial than that above quoted from the argument of counsel for plaintiff below:

"That the statements thus made by counsel transcended the bounds of legitimate argument and were grossly improper, is both obvious and conceded, but it is claimed that any prejudicial effect which such statements may have had was removed or cured by the subsequent action of court and counsel. This conclusion we think, by no means follows, nor does it affirmatively appear in this case that such conclusion is justified by the facts. While it is true that courts of last resort have frequently, though not uniformly, held the rule to be, that the prejudice, if any, resulting from the misconduct of counsel in argument to the jury may be eliminated or cured by the prompt withdrawal of the objectionable statements made by counsel accompanied by an instruction from the court to the jury to disregard such statements, yet this rule, so far as our examination of the authorities has disclosed, is recognized and applied by the courts in those cases only, where it is made to appear by the record from a consideration of the character of the statements made, that their prejudicial effect has probably been averted by such withdrawal and instruction."

Continuing the opinion, the learned judge points out, "the question of defendant's negligence and consequent liability was at best a very close question of fact, involved in much uncertainty and doubt." And that:

"The attempted withdrawal of these statements from the jury was wholly impotent to rid them of the mischievous inference that they were nevertheless true, and was utterly ineffectual to dislodge or remove from the minds of the jurors the harmful impression, which such statements were calculated, and obviously intended to produce. No other rational conclusion can be reached in this case than that plaintiff's counsel by the making of such statements intended thereby and in that way to

get before the jury a fact which he was not entitled to, and one which from considerations of public policy the law forbade should be mentioned on the trial, and this for the sole and obvious purpose of inducing in the minds of the jury the impression or belief, that the railroad company in making such offer had, indirectly at least, confessed and admitted its liability. Manifestly this was the purpose of counsel's statements, and we think it impossible to say in this case that such was not their effect. While it should perhaps be said, that after objection made, court and counsel did all in their power to counteract and overcome the effect of these improper and prejudicial statements, yet, the mischief had been done, the poison had been injected, and that which thereafter occurred was not, in our judgment, a sufficient antidote. It is the policy of the law to encourage the settlement of legal controversies, and hence it does not permit an offer of compromise to be given in evidence as an acknowledgment or admission of the party making it, and this salutary rule, which is grounded upon consideration of public policy, just as imperatively forbids that the fact that such offer was made shall be mentioned or commented upon by counsel in argument to the jury, and when it is, unless it shall clearly appear from the record in the particular case that the verdict of the jury was not affected thereby, the misconduct is such as to require in the due administration of justice, that a new trial be granted therefor. The view that misconduct of counsel such as is complained of in this case is sufficient to warrant and require the granting of a new trial unless it be made to appear that the verdict of the jury was not in any manner influenced thereby, is fully supported by the several cases cited in the brief of counsel for plaintiff in error, and by many others."

For the reasons thus expressed, we think the court below erred in the case at bar in refusing to grant a new trial for misconduct of counsel.

For error, therefore, in charging the jury in accordance with requests Nos. 3 and 6 by the plaintiff below, and in refusing a motion for a new trial, because of misconduct of counsel for the prevailing party, the judgment is reversed and the cause remanded for a new trial.